at all, 23-461. Mr. Klein, whenever you're ready. May it please the court, I'm Alexander Ronaldea and LaTurco. I'm here on behalf of Luis Batista Reyes. 30 years ago, Brian Patterson was assaulted by a dark-skinned African-American male with an afro and a long black coat. I'm here representing a light-skinned Hispanic man who had no afro and was wearing a waist-high New York Giants blue jacket. He was nevertheless prosecuted and convicted of the assault and spent nearly 25 years in prison until on consent of the district attorney's office, the charges were vacated and dismissed. This case raises one simple question all these decades later. And it is, if Luis was not the person who assaulted Brian Patterson, then who put Laura up, Laura Pullen up, to say that he was? The answer is that Robert Paul was the person who put him up to it and that that is supported by more than enough evidence to allow the case to be presented to a jury. First, this was Robert Paul's case. Robert Paul was the detective who interviewed every single witness that there was. He's the one who took every statement and he is the person who had prior experiences with Laura Pullen. Let me just interrupt for a second. You said who put Laura Paul up to doing this? I find it easy to imagine reasons why both Shannon Houser and Laura Ashley Paul, you know Pullen White, would want to put Mr. Batista Reyes behind bars or away from them. That doesn't mean that there wasn't evidence necessarily that Detective Paul, who was in charge of the investigation, may have done something wrong. But also the grand jury proceedings were remarkably spare and Mr. Paul wasn't in charge of that at all. And Laura Paul, with her history, had many changes of heart and changes of story and so on. Mr. Paul was, you know, confronted with two people, I guess, who said that Mr. Batista Reyes did this and he affected an arrest. So didn't he have probable cause to do that? At least a jury ultimately found that there was enough. If it were true, Your Honor, that Robert Paul simply confronted two witnesses who said that he did this, then of course he would have probable cause to give the case over to the prosecution and to have the case indicted and prosecuted. But there's evidence in the record from which my client was entitled to a favorable inference to say that he didn't simply come across these witnesses who said that Lewis did this, but that in fact he tampered with these witnesses to say that Lewis did this. Where's the evidence of that? They've denied it. Well, there are a number of pieces of evidence in the record to support it. Are you talking about the letters to the priest situation? Because that's, there's an admissibility question there. There's a what question there? Admissibility, whether the evidence was admissible or not. Sure. So let me go through the evidence in the record that supports that this was Robert Paul or entitles my client to an inference that it was Robert Paul. Maybe you can add more to it than the letters because the case seemed to boil down to me, to the letters. Let me go forward. Sure. And I will address all the pieces of evidence in the record and then I'll circle back, if it's okay, to the admissibility of the letters. But first, I can't ignore the 800-pound elephant in the room, which is these letters. These are the letters that were relied upon by the district attorney's office and by the criminal court in allowing a nearly 25-year-old conviction to be vacated and to have the charges dismissed. In those letters, Laura Pullen says that Louis Batista Reyes is doing, quote, 25 to life for something he didn't do and that it is, quote, devouring her all of these years. She spread these letters out across more than just one over several months, written to a pastor, where the vast majority of these letters had nothing to do with Louis Batista Reyes and so they are really dripping. But they also didn't have direct anything to do with Detective Paul. Sure. I mean, it just was they. Sure. And she's telling a kind of fantastical story. So put a pin in that. They say they. Yeah. But there are only really two people that that could have pertained to in terms of who would have manipulated her to say that it was Louis Batista Reyes. And that is it could have been the DA, who she references, and it could have been Robert Paul. There's really nobody else in the picture, which begs the question, why would she use the plural they? There was another investigator, though, wasn't there, who was involved? Only very early on, because Shannon Hauser had been known to law enforcement in that community from before. She was very troubled at the time. She was 18 years old, addicted to crack, and there had been a robbery of her mother that was under investigation by one of Detective Paul's colleagues. So there was another investigator kind of in this universe, but not leading this investigation by any means. But we have the letter and the reference to they, plural. And we know, by the way, that to the extent that Laura Pollin was tampered with, that it would have infiltrated not just her testimony, but also her statement, because the statement and the testimony were consistent insofar as they blamed it on Louis. So it wouldn't make sense if this was just the DA who did this, because then there would be a discrepancy between who she was blaming. But that is the letter, and the case doesn't rely solely on the letter. But it is the biggest piece of evidence, because it's what led to why we're all here today, which is the vacater of the conviction. Beyond the letter, however, we have Shannon Hauser, who was never called to testify in the grand jury or a trial, but who did give a statement. Well, she was unavailable, right? Well. It appears that they couldn't find her. Well, they couldn't find her except whenever they needed to, they could. They knew where her mother lived. Shannon was known to Detective Paul from before this incident. We're speculating now. We are. She didn't testify. She didn't testify, and we don't know why. I can't stand here and say that, you know. It seems to me that when Pauline recounted, retracted the letters and said they were done because I was afraid of Batista, then that gives an explanation for why she wrote it and then later on why she wrote the letters. And then later on she put Hanson right back to her original statement. And so, you know, maybe that was enough. That made the evidence shaky enough for the DA to decide, well, I don't think we should continue this and he should be released. But still, as far as what Paul was dealing with at the time, I'm not sure what, you know, what we're talking about here. You're saying it was fabrication of evidence, and that presumably goes to the coercion of the witnesses. And, in fact, I think your entire case goes to coercion of the witnesses, which they flatly denied. So where does that leave us? Correct, Your Honor. The case does rise or fall on the coercion of witnesses, but we're not here after trial where we're evaluating whether there is sufficient evidence to convince a jury that this happened. We're here on an appeal from summary judgment where our standard is to show that there is any evidence in the record from any source from which a reasonable inference can be drawn in my client's favor. To address Your Honor's point about Laura Poland recanting because she was afraid of Lewis, just think about that for a moment. She's not recanting because she's afraid of Lewis. She wrote that she's recanting and saying that the letters were written because she was afraid of Lewis. Right. She wanted to make sure that she wasn't, that Lewis didn't come after her and this was a way of helping. Right. Her story was that she recanted in her letters to the pastor because she was afraid of him. Now, think about whether that makes any sense. She wrote that letter in 2002 when he was seven years in to a quarter century bid. When, at the conclusion of that sentence, he would have been deported, and she wanted to curry favor with Lewis because she was afraid of him. And so she wrote letters to a pastor that she couldn't have ever thought would turn it over to law enforcement. If she were truly doing it to help Lewis, to curry favor with him, wouldn't she have written that to law enforcement? And wouldn't she have focused the letters on him instead of her family and her relationship with God? The fact that she wrote these letters to a pastor and the fact that they did not focus on Lewis renders them unusually credible in light of the allegation that she wrote this simply because she wanted to curry favor with him. And, in fact, if that's what she wanted to do, then why would she unrecant? So could I ask, just in terms of helping me focus, so we're on summary judgment was granted. And at this point, to reverse that, you need to show relevant disputed issues of fact or an error of law that the district court made. I was interested to know what those are. It seemed to me that the district court may have erred in granting too much deference to the grand jury's findings, especially after I looked at the very short grand jury transcript because it seemed to me inadequate. But perhaps you could focus on the disputed issues of fact and the evidence that you have that you think the district court wrongly decided and should have gone to a jury, just in a very kind of one, two, three kind of way. Sure. And it really is one, two, and three, which is the disputed question of fact is did Robert Paul tamper with witnesses in this case? Did he tamper with Laura Pullen? And the evidence that we have that he did this, which, again, is not for trial. It's simply for summary judgment to allow for an inference to create a, quote, unquote, genuine question of fact is Laura Pullen writing letters to a pastor saying that she was manipulated by a, quote, they. We have Shannon Hauser signing a statement for Robert Paul claiming that she was inside the room where this assault took place when she swears that that is not true and providing details about the inside of that room that she couldn't possibly have known if it's true that she wasn't inside. Perhaps it's a coincidence that she was able to say in that statement that the victim held a knife on his nightstand in a darkened room where her view would have been obstructed from the nightstand from the door if she was never in it. Perhaps it's a coincidence that she guessed right. But if she didn't guess right, then it is a reasonable inference that she was given that information. And who would have given that information to her? The person who took the statement who had an interest in taking Lewis off the streets. Beyond the statement from Shannon, however, oh, and Shannon says, I told him what he wanted to hear. How would a witness know what he wanted to hear? But we have more than that. We have the letter from Laura to a pastor saying that she was manipulated. We have Shannon Houser swearing that the statement she gave to him was false. And we have the victim saying that he didn't give a statement to Robert Paul, the sworn deposition, until he was told that Lewis was arrested in possession of his Nintendo, which we know is false. Even Robert Paul in his deposition said that he wasn't in possession of his Nintendo when he was arrested. And in fact, Lewis wasn't taken off the street. He turned himself in on other charges. And if he had been in possession of the Nintendo, it would have featured prominently at the trial. And it never did. And of course, he wouldn't insist on his innocence if he brought evidence of his guilt to the police station. Three principal witnesses in this case, three witnesses for whom there is evidence in the record that they were tampered with. And we can debate about the strength of that evidence. Judge Walker, you could say, well, Laura Pullen has unrecanted, and here's why she might have done that. These are trial questions as to the weight of the evidence to be afforded to each piece of evidence. Think about it like this. To take it out of the context of a criminal investigation from 30 years ago, let's say you go out to dinner with two of your friends. And each one of your friends slowly reports back to you that night that they're feeling sick, that they have stomach pain. And then you start to experience stomach pain. You can say, well, maybe there's a flu going around. You could also say maybe the reason why we all got sick with the same symptoms is because there was a problem at the restaurant. There is a problem in the restaurant here. All three witnesses experienced similar mistreatment, whether they gave statements that were false, whether they recanted in letters to a pastor, whether they claimed they were lied to to secure your cooperation. They were all treated the same way. And the question is, is it reasonable to produce to a jury the question, is this a coincidence, or is it because Robert Paul had a design in place to remove Louis Bautista from the streets? OK. I have a question. It's seven minutes over. Sorry. So I think you can wrap it up. Yes. I want to address. There is a time constraint. Oh, OK. The judges are under a time constraint. I want to address the point I promised I would address, which is the admissibility of the letters by Laura to Pastor Lorenz. There are two reasons why the letter should be admissible. And keep in mind, they were admissible enough for the DA's office. They were admissible enough for criminal court. And, by the way, the district court here didn't deem them inadmissible. So this would be the first court in this saga to deem these letters to be inadmissible. But, with that all said, federal law provides for a residual clause for admissibility in cases like this, and, in fact, has done so under extraordinarily similar circumstances in the Morgan case. So the first thing to look at is the circumstances in which the letters were written. The circumstances in which this letter were written. Two arguments. One way or the other. The first is that it was a statement against her interest because it would implicate her prior statement, that she made a false statement earlier. Correct. The other is that it was actually in her interest because she wanted to curry favor eventually with Rez Batista. So it goes either way on those arguments. Well, that would go to a statement against interest. But as to, you know, so... The trustworthiness point is the point you're relying on? So it can be admitted as a statement against interest, or it can be admitted through the catch-all provision in federal law, Rule 807, the residual clause, which doesn't require that it be a statement against interest. Oh, I understand. Simply that it be issued under circumstances that are trustworthy, corroborated by other evidence, and more probative than other evidence for that fact. The circumstances of these letters are extremely trustworthy in light of the circumstances in which she wrote them. She was not under police coercion at the time. She didn't write them to police. And she wrote them to a pastor whom she couldn't have known would ever report them, which is very similar to what happened in the Morgan case, when this court held that statements outside of the pressure of law enforcement, you know, outside of a coercive atmosphere, letters issued to a romantic interest, were admissible under the residual exception in the federal rules of evidence. But certainly, regardless of whether they are admissible for that reason, where they were deemed credible enough to vacate a conviction, they were statements against her interest and looked no further than the letters themselves to see how much she viewed it that way. They were dripping with apologies. This has been devouring me all these years. I'm, quote, quote, so, so sorry. I want to write the wrongs that I've done. These are all quotes. Who would write these letters in this fashion if they were false? How strange would it be, seven years after he's convicted, to write letters to a pastor saying that you had wrongly convicted somebody if you hadn't done that? All right, Mr. Kline. Thank you. We have your position. You have some rebuttal. Okay, Ms. Skipper, whenever you're ready. Good afternoon, Your Honors. May it please the Court. My name is Ranan Gifford from Patterson, Sampson, Ginsburg & Griffin, and I rise on behalf of Defendant Appellee Robert Paul. The lower court's decision ought to be affirmed by this court because there is no question of fact for a jury to resolve. The entire case is premised upon Mr. Batista's conjecture and surmise as to what people may have intended, not what was actually the facts before the case. Turning to the letters, which I think are really the sole evidence that should be considered as far as whether there was fabrication of evidence or if the presumption created by the indictment was overcome, they are not admissible. 807 would not render those admissible. Mr. Kline referred to the Morgan case. However, was this raised below and the district judge just didn't address it, or was this not raised until now? It was raised below, and the district court did not address it. Let me ask one. The district court treated them as if they were admissible. It didn't rule on admissibility. Correct. I think the district court was doing an analysis of even if he did consider the letters, they did not change his analysis. So there was no affirmative decision as far as the admissibility at that juncture. With respect to the presumption of probable cause that we ordinarily take as established by the grand jury indictment, it struck me that the grand jury proceedings here were remarkably limited. And, for example, the race identification question was not at all raised. I mean, the whole thing must have taken seven minutes and was prolonged only because the grand jurors had some questions about what had been stolen that had not been addressed by the prosecutor. The district court seemed to treat, though, the grand jury, the essence of this claim, as requiring the plaintiff to show that Detective Paul himself had done something to make the grand jury proceedings unfair. In order to avoid the presumption. I don't read the law that way. It seems to me that the grand jury proceedings can be shown to have been inadequate for whatever reason, or manipulated by the DA, that that is enough to eradicate the presumption. Do you agree with that legal proposition, or is that incorrect? Respectfully, I do not agree with that proposition, Your Honor. When there is an indictment, Cologne v. City of New York, its progeny, and all of the cases that the Second Circuit relies on based upon that case, hold that once there is an indictment, the court may not weigh the evidence upon which the police acted, or which was before the grand jury after that. Excuse me, I'm not talking about weighing it again myself. That was kind of just separate commentary. But in order to eradicate the presumption, do you have to show that the person who is being charged with malicious prosecution or fabrication of evidence himself caused something unfair or corrupted the grand jury proceedings in some way, or just that it was corrupted for some reason? In order to bring a malicious prosecution claim against the specific defendant here, police misconduct, bad faith, perjury or suppression of evidence by the defendant in order to hold him liable for personal involvement in this civil rights violation. There's the two parts of the civil rights violation analysis, and while the Tobias case that was relied upon by the plaintiff to say that the presumption could be overcome by the prosecutor's misconduct, that is a greater reading into what Colon and all other cases have held as far as being able to eradicate that presumption. So you're saying even if the prosecutor can be shown to engage in gross misconduct and put forward before the grand jury a perjured testimony, that another person who's being charged with malicious prosecution should be the presumption of regularity and probable cause created by the indictment should still apply against that individual, even though you can show that the prosecutor put forward perjured testimony to the grand jury? Yes, Your Honor, that's correct, because the probable cause analysis is based upon the time of the prosecution, even if you were to not consider the indictment in this scenario. The analysis is based upon what was known at the time that the prosecution was commenced, which would be bringing forth the charges in order to be brought to the grand jury. So here, what information did Defendant Paul have that he reasonably relied upon to believe there was probable cause to pursue this claim? If there was gross misconduct against the prosecutor, then that claim is against the prosecutor. I think we wouldn't be able to get to a claim against this defendant if he's not involved. It's the proximate cause analysis situation here. But if the testimony that was ultimately given to the jury is the claim that was coerced allegedly by him and was carried through, the grand jury's participation, even if it was corrupted in some way, you're saying it still isn't meaningful? Not as far as in that particular analysis. If there was the fact that the statement that was the basis of the grand jury testimony was found to have been what was improper and that it was coerced, then the police are presenting that coerced statement. So I think that that analysis kind of goes one into the other, and then it would overcome the presumption in that specific scenario. But here that's a little bit different because the letters that are relied upon so heavily by the plaintiff are not admissible. They're not reliable, and it's not because she's writing about scripture that they now become reliable. She made those statements, and as she reaffirmed when she was interviewed by investigator William Ward in 2018, she only made those statements because she wanted Mr. Batista to believe she was coerced, because she was afraid of him. Is there any basis for your emissary pointed out that that's an odd way to make that statement and to express that view when you're writing to a patent? Why not put it in an affidavit or have a, if you're really torn apart by this, go in and speak to law enforcement officers directly? I submit to you that she put them in the letters because she wanted to have them think that she was coerced. She had no intent of actually recanting her statement, which is clear based upon the fact that she was given, she gave a subsequent statement in 2017 where she said, yeah, the letters, or actually she doesn't say that in her statement. She says in her statement that her initial statement was actually true. She stands by it 100 percent, and she does not recant that. A lot of this, I mean, it's interesting you mentioned the statement of the pastor. My first thought was I was a little surprised that this pastor is revealing these confidences, but I think the fact that we're coming up with these different ideas about this, I mean, does this go to a factual dispute that shouldn't be resolved on summary judgment? No, I do not believe it goes to a factual dispute because the only basis for having a factual dispute is based upon the plaintiff's conjecture and surmise as to whether or not Defendant Paul coerced these statements. Again, if you look at even except the letters and we look at them, as you pointed out with my adversary here, she does not identify the DA's office or my client as coercing or fabricating her statement. She indeed says quite often throughout it that she was given a script. She was told that she must testify. She was told that it was going to be, you know, if she doesn't testify, it would be her that would have charges against her. She doesn't say that she made false statements to the police specifically or she was coerced by the police to do so. But Detective Paul was in charge of the investigation and, you know, he worked with the DA, but why isn't it reasonable to infer from a reference to they or, you know, a kind of general reference that I was coerced that he had some potentially culpable involvement? Because she doesn't say they coerced me into giving anything. She says they forced me to testify. And that's what goes into this analysis of whether we're looking at her rationale for giving this and why these statements in that letter are not trustworthy and not admissible. Because we have all these different varying versions of events of what she may have implied, based upon those unsworn statements. But the two sworn statements that we do have, one in 1993 and one in 2017, stand by that Mr. Batista was the individual who committed this assault, which is what my client relied upon. And similarly with Ms. Houser's statement that Mr. Batista was the individual who assaulted Mr. Patterson, which gave the probable cause to proceed with the malicious prosecution or the prosecution. Sorry. There we go. I see my time has expired. If there is no other questions, I thank the court for its time. And I just reiterate that I believe the lower court's decision ought to be affirmed for the reasons outlined therein. Thank you. Thank you. Thank you. The first point I want to make in my limited rebuttal time has to do with what you were referencing, Your Honor, with regard to whether the grand jury can act judicially and be entitled to a presumption when there is an instance of prosecutorial misconduct. It's useful to think about why we entitle grand juries to a presumption of probable cause in the first place. It's not because we are giving favor to one particular actor in the criminal justice system. It's because we assume that the grand jury is acting judicially and properly and is not being corrupted. I think the hypothetical that you posed is perfect, which is suppose a prosecutor came in, knowingly supported perjury or made up allegations in the case, which we discovered. You couldn't, I mean, I don't think anyone would hear that and think, well, we ought to presume that the grand jury is entitled to deference anyway. The reason why we are giving the grand jury deference is because we're assuming that the grand jury wasn't manipulated. If a prosecutor comes in, like in a case here. Well, it's the regular course of business concept. The norm is that grand juries are not corrupted. Correct. Correct. And in this case, we know for a fact this is not entitled to any. I mean, this isn't subject to any dispute. We know for an absolute fact that the victim had said that the perpetrator was a dark skinned black male with an Afro wearing a long black coat. And that my client is so light skinned that he's listed as Caucasian in government records. A fact that was not disclosed to the grand jury. That he did not have an Afro, which was not disclosed to the grand jury. And that his clothes did not match the description of the perpetrator, which was not disclosed to the grand jury. I don't think the grand jury received any testimony about what the perpetrator looked like at all. Which is astonishing when you think about how much was on the line here. My client did almost a quarter century in prison after a one day trial and a grand jury that you could read during a water break. And they didn't mention the fact that the only victim in the case had identified someone who doesn't resemble him? Is the U.S. attorney or prosecutor a defendant here? He's not a defendant here because he... Which witnesses to put it before the grand jury? And you know, witnesses before a grand jury. And the idea is that presumably you want to get an indictment. And that's what you get from the grand jury. It's not an open, it's not a pretrial in the case. And hearsay can go before the grand jury. There are all sorts of things. The only questions from the evidence that's before the grand jury was a probable cause to indict. That's it. It's not necessary that everything be put before a grand jury. That's negative to your case if you're a prosecutor. Right, not everything. But some things you do have to put forward. Like in a case like this where there's almost no evidence that he did it. One final point, Your Honor. My friend indicated that these letters simply said that Laura was given a script. And that she said what they wanted her to say. That is not accurate. The other thing that she said is that Lewis is innocent. There's no way of reading that letter that is in any way consistent with her testimony in the trial or in the grand jury where she said that she knew he was guilty. So the question is, is there evidence in the record to create a genuine dispute that the reason why she gave that false testimony at trial and in the grand jury was Robert Paul. I submit that there is evidence in the record to permit that inference. And for that reason, we respectfully request that Lewis Batista Reyes be given his day in court at trial. Thank you. Thank you both. We'll take the case under advisement.